# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
Filed: December 5, 2017

| | |
|---|---|
| * * * * * * * * * * * * * <br> ELLENA PROKOPEAS *and* <br> CHRIS PROKOPEAS, *parents of* <br> C.A.P., *a minor*, <br> <br> Petitioners, <br> <br> v. <br> <br> SECRETARY OF HEALTH <br> AND HUMAN SERVICES, <br> <br> Respondent. <br> * * * * * * * * * * * * * | UNPUBLISHED <br> <br> <br> <br> No. 04-1717V <br> <br> <br> Chief Special Master Dorsey <br> <br> Attorneys' Fees and Costs; Vague <br> Entries; Paralegal Tasks; <br> Administrative Tasks; Autism. |

Clifford John Shoemaker, Shoemaker, Gentry & Knickelbein, Vienna, VA, for petitioner.
Voris Edward Johnson, U.S. Department of Justice, Washington, DC, for respondent.

## DECISION AWARDING INTERIM ATTORNEYS' FEES AND COSTS[1]

On November 29, 2004, Chris and Ellena Prokopeas ("petitioners") initially filed a "Short Form Autism" petition for compensation under the National Vaccine Injury Act of 1986, 42 U.S.C. §§ 300aa-10 et seq. (2012) ("Vaccine Act"), on behalf of their son, C.A.P., a minor. See Short Form Autism Petition For Vaccine Compensation dated Nov. 29, 2004 (ECF No. 1) at 1. By filing that "Short Form Autism" petition, petitioners in effect alleged that C.A.P. suffered from autism, and that his autism was caused by either or both (1) the MMR (measles, mumps, rubella) vaccine, and (2) vaccines containing thimerosal, a mercury-based preservative contained in a number of childhood vaccines until about 1999. See Autism General Order #1, Exhibit A, Master Autism Petition for Vaccine Compensation, 2002 WL 31696785, at *8 (Fed. Cl. Spec. Mstr. July

---

[1] Because this unpublished decision contains a reasoned explanation for the action in this case, the undersigned intends to post this decision on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to delete medical or other information, that satisfies the criteria in § 300aa-12(d)(4)(B). Further, consistent with the rule requirement, a motion for redaction must include a proposed redacted decision. If, upon review, the undersigned agrees that the identified material fits within the requirements of that provision, she will delete such material from public access.

1

3, 2002). On August 15, 2011, petitioners filed an amended petition, alleging that C.A.P. "developed encephalopathy from repeated exposures to mercury and other vaccine ingredients" found in certain vaccinations C.A.P. received during his first year of life. See Amended Petition dated Aug. 15, 2011 (ECF No. 51) at 3. Petitioners filed a second amended petition on March 12, 2012, virtually identical to the amended petition filed on August 15, 2011, except that it added certain citations to the petition. See Amended Petition dated Mar. 12, 2012 (ECF No. 57) at 3.

A fact hearing was held in Washington, DC on August 1, 2016. On June 14, 2017, then-Special Master Hastings issued a Ruling on Factual Issues in the case. Prokopeas v. Sec'y of Health & Human Servs., No. 04-1717V, 2017 WL 3033775 (Fed. Cl. June 14, 2017). Petitioners now request an award of interim attorneys' fees and costs.

## I.     The Instant Motion

On September 29, 2017, petitioners filed an application for interim attorneys' fees and costs, requesting $99,037.35 in attorneys' fees for their counsel, Clifford J. Shoemaker of Shoemaker, Gentry, & Knickelbein (the "Shoemaker Firm"), and $9,795.70 in attorneys' costs, for a total of $108,833.05. Petitioners ("Pet'rs'") Application ("App.") dated September 29, 2017 (ECF No. 147) at 1.[2] In accordance with General Order #9, petitioners have filed a signed statement indicating that they incurred out-of-pocket expenses in the amount of $7,723.57. Id. at 1-5. They additionally seek reimbursement of those out-of-pocket expenses. Id. at 1.

Respondent filed a response to petitioners' interim application on October 6, 2017. Respondent's Response ("Resp't's Resp.") dated October 6, 2017 (ECF No. 148). Respondent argues that "[n]either the Vaccine Act nor Vaccine Rule 13 contemplates any role for respondent in the resolution of a request by a petitioner for an award of attorneys' fees and costs." Id. at 2. Respondent adds, however, that he is "satisfied the statutory requirements for an award of attorneys' fees and costs are met in this case." Id. Additionally, he "respectfully recommends that the [undersigned] exercise [her] discretion and determine a reasonable award for [interim] attorneys' fees and costs." Id. at 3.

Although respondent does not provide specific objections to the petitioners' interim fees and costs application, he requests that the undersigned particularly take into account the Ruling on Factual Issues in this case, which, *inter alia*, provided then-Special Master Hastings' overall assessment of the petitioners' experts in the case. Resp't's Resp. at 1, n. 1. Citing to the Ruling on Factual Issues, respondent states that the "petitioners' experts relied on flawed assumptions that were based entirely on parental reports, which are directly contradicted by the medical records," and requests that the undersigned "should take this factor into consideration" in determining a reasonable award of fees and costs in this instant application. Id. Moreover, respondent states that "at least some of petitioners' claimed costs appear to relate to evaluations sought in the furtherance

---

[2] Petitioners filed their application for interim attorneys' fees and costs without proper pagination. See generally Pet'rs' App. Thus, for ease of reference, the undersigned will use the page numbers generated from the CM/ECF filing reflected at the top of the page. Therefore, the page entitled "Application For Attorneys' Fees & Costs" will be cited as "Pet'rs' App. at 1" with subsequent pages numbered accordingly.

of C.A.P.'s medical treatment," and thereby "would not be properly reimbursable as a litigation expense." Id. Petitioners did not file a reply.

The case was reassigned to the undersigned's docket on September 12, 2017. See Notice of Reassignment dated Sept. 12, 2017 (ECF No. 144). For the reasons discussed below, the undersigned awards petitioners a total of $80,844.76 in attorneys' fees and costs to Mr. Clifford J. Shoemaker, and $7,573.57 for petitioners' out-of-pocket costs.

## II. Legal Standard for Interim Attorneys' Fees and Costs

The Federal Circuit has held that an award of interim attorneys' fees and costs is permissible under the Vaccine Act. Shaw v. Sec'y of Health & Human Servs., 609 F.3d 1372 (Fed. Cir. 2010); Avera v. Sec'y of Health & Human Servs., 515 F.3d 1343 (Fed. Cir. 2008). The Circuit has stated, "Congress made clear that denying interim attorneys' fees under the Vaccine Act is contrary to an underlying purpose of the Vaccine Act." Cloer v. Sec'y of Health & Human Servs., 675 F.3d 1358, 1361-62 (Fed. Cir. 2012).

In Avera, the Federal Circuit stated, "[i]nterim fees are particularly appropriate in cases where proceedings are protracted and costly experts must be retained." 515 F.3d at 1352. In Shaw, the Federal Circuit held that "where the claimant establishes that the cost of litigation has imposed an undue hardship and there exists a good faith basis for the claim, it is proper for the special master to award interim attorneys' fees." 609 F.3d at 1375. However, Avera did not exclusively define when interim fees are appropriate, rather it has been interpreted to allow special masters discretion. See Kirk v. Sec'y of Health & Human Servs., No. 08-241V, 2013 WL 775396, at *2 (Fed. Cl. Spec. Mstr. Mar. 13, 2009); Bear v. Sec'y of Health & Human Servs., No. 11-362V, 2013 WL 691963, at *4 (Fed. Cl. Spec. Mstr. Feb. 4, 2013). Even though it has been argued that a petitioner must meet the three Avera criteria – protracted proceedings, costly expert testimony, and undue hardship – special masters have instead treated them as possible factors in a flexible balancing test. Avera, 515 F.3d at 1352; Al-Uffi v. Sec'y of Health & Human Servs., No. 13-956V, 2015 WL 6181669, at *7 (Fed. Cl. Spec. Mstr. Sept. 30, 2015).

The undue hardship inquiry looks at more than just financial involvement of petitioner; it also looks at any money expended by petitioner's counsel. Kirk, 2013 WL 775396, at *2 (finding "the general principle underlying an award of interim fees was clear: avoid working a substantial financial hardship on petitioners and their counsel."). Accordingly, special masters have routinely awarded interim fees to petitioner's original counsel when they are proceeding through litigation with new representation. Woods v. Sec'y of Health & Human Servs., 105 Fed. Cl. 148, 154 (Fed. Cl. 2012); Bear, 2013 WL 691963, at *5; Lumsden v. Sec'y of Health & Human Servs., No. 97-588, 2012 WL 1450520, at *6 (Fed. Cl. Spec. Mstr. Mar. 28, 2012). Petitioners filed a status report on October 23, 2017, informing that they were in the process of obtaining new counsel in the case. See Petitioners' Status Report dated Oct. 23, 2012 (ECF No. 149). Moreover, petitioners, and their current counsel, have been litigating this claim for more than thirteen years and have used the services of several expert witnesses in the case. The undersigned thus finds it reasonable to award interim attorneys' fees and costs at this juncture to avoid undue hardship for petitioners and their counsel.

3

### III.     Reasonable Attorneys' Fees

If interim fees are deemed appropriate, petitioners are eligible for an interim award of reasonable attorneys' fees and costs if the undersigned finds that they brought their petition in good faith and with a reasonable basis. §15(e)(1); Avera, 515 F.3d at 1352; Shaw v. Sec'y of Health & Human Servs., 609 F.3d 1372 (Fed. Cir. 2010); Woods, 105 Fed. Cl. at 154; Friedman v. Sec'y of Health & Human Servs., 94 Fed. Cl. 323, 334 (Fed. Cl. 2010); Doe 21 v. Sec'y of Health & Human Servs., 89 Fed. Cl. 661, 668 (Fed. Cl. 2009); Bear, 2013 WL 691963, at *5; Lumsden, 2012 WL 1450520, at *4.   Respondent did not raise any objection to the good faith or reasonable basis for the claim.  As there is no other reason to deny the award of interim fees and costs, the undersigned will award petitioners' reasonable interim fees and costs in this instant decision.

While respondent did not contest the billing rate or specific entries, the undersigned has the discretion to reduce awards sua sponte, independent of enumerated objections.  Sabella v. Sec'y of Health & Human Servs., 86 Fed. Cl. 201, 208-09 (Fed. Cl. 2009); Savin v. Sec'y of Health & Human Servs., 85 Fed. Cl. 303 (Fed. Cl. 2008), aff'g, No. 99-537V, 2008 WL 2066611 (Fed. Cl. Spec. Mstr. Apr. 22, 2008).

a. **Requested Hourly Rates**

Petitioners request compensation for their attorneys, Mr. Clifford J. Shoemaker, Ms. Renee J. Gentry, and Ms. Sabrina S. Knickelbein.[3] They request the following hourly rates for work performed by each attorney from 2004 to 2017:

|  | **Mr. Shoemaker[4]** | **Ms. Gentry[5]** | **Ms. Knickelbein[6]** |
|---|---|---|---|
| **2004** | $278.00 | $260.00 | --- |
| **2005** | $288.00 | $270.00 | $225.00 |
| **2006** | $299.00 | $280.00 | --- |
| **2007** | --- | $290.00 | $261.00 |
| **2008** | $324.26 | $301.00 | $271.00 |
| **2009** | $336.58 | $312.00 | $281.00 |
| **2010** | --- | --- | $291.00 |
| **2011** | $336.58 | --- | $302.00 |
| **2012** | $372.00 | $348.00 | $313.00 |
| **2013** | $385.00 | --- | $325.00 |
| **2014** | $400.00 | --- | $337.00 |
| **2015** | $415.00 | $400.00 | $350.00 |
| **2016** | $430.00 | --- | $365.00 |
| **2017** | $440.00 | --- | $378.00 |

b. **Hourly Rates Awarded**

i. **Mr. Shoemaker**

Mr. Shoemaker's requested hourly rates for work performed between 2004 and 2009 have been previously found to be reasonable in Hooker v. Sec'y of Health & Human Servs., No. 02-472V, 2017 WL 3033940, at *26 (Fed. Cl. Apr. 11, 2017), and will awarded in full in this instant application. Mr. Shoemaker's requested hourly rate for 2011 also appears to be reasonable. The undersigned will thus award Mr. Shoemaker's 2011 requested rate of $336.58 in this instant application.

Mr. Shoemaker's requested hourly rate for work performed in 2012 appears to be reasonable, especially in light of the fact that he was previously awarded a slightly higher rate in a prior case. See L.A. v. Sec'y of Health & Human Servs., No. 12-629V, 2016 WL 1104860, at *5

---

[3] Petitioners' application for attorneys' fees and costs references Mr. Shoemaker as "CJS," Ms. Gentry as "RJG," and Ms. Knickelbein as "SSK." See generally Pet'rs' App.

[4] See Pet'rs' App. at 59-63, 66, 70, 75.

[5] See Pet'rs' App. at 77-78.

[6] See Pet'rs' App. at 78-79, 83, 86, 89, 91, 93, 96, 98.

(Fed. Cl. Spec. Mstr. Feb. 29, 2016). Thus, the undersigned will award in full Mr. Shoemaker's requested 2012 hourly rate of $372.00 per hour in this instant decision.

On April 12, 2016, the undersigned issued a reasoned decision in Miller v. Sec'y of Health & Human Servs., No. 13-914V, 2016 WL 2586700 (Fed. Cl. Spec. Mstr. April 12, 2016), addressing the hourly rates of Mr. Shoemaker and Ms. Gentry for work performed from 2013 to 2015. The undersigned concluded that Mr. Shoemaker and Ms. Gentry may be compensated at forum rates[7] consistent with McCulloch v. Sec'y of Health & Human Servs., No. 09-293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015).[8] The undersigned adopts the reasoning in Miller for the instant analysis. As Mr. Shoemaker's requested hourly rates for 2013 through 2015 in this instant application are in accordance with the hourly rates established in Miller, the undersigned awards his hourly rates in full.

Mr. Shoemaker's requested rate for 2016 have been previously found to be reasonable and have been awarded. See, e.g., Mikkelson v. Sec'y of Health & Human Servs., No. 15-867V, 2016 WL 6803786 (Fed. Cl. Spec. Mstr. Oct. 3, 2016); Boylston v. Sec'y of Health & Human Servs., No. 11-117V, 2016 WL 3080574 (Fed. Cl. Spec. Mstr. May 10, 2016). The undersigned also previously awarded that rate in a recent decision in a special processing unit ("SPU") case. Patton v. Sec'y of Health & Human Servs., No. 16-461V, 2017 WL --- (Fed. Cl. Spec. Mstr. Aug. 24, 2017). The undersigned thus awards Mr. Shoemaker's 2016 requested rate in full.

The undersigned in Patton also set the Shoemaker Firm's 2017 rates, finding the 2017 Fee Schedule[9] posted on the Court's website to be persuasive in specifically resolving the Shoemaker

---

[7] The undersigned granted Mr. Shoemaker the following hourly rates in Miller for the years 2013 through 2015:

|  | 2013 | 2014 | 2015 |
|---|---|---|---|
| **Mr. Shoemaker** | $385.00 | $400.00 | $415.00 |

See Miller v. Sec'y of Health & Human Servs., No. 13-914V, 2016 WL 2586700, at *8 (Fed. Cl. Apr. 12, 2016). Moreover, the undersigned granted Ms. Gentry an hourly rate of $400.00 per hour for the year 2015. Id.

[8] Specifically, McCulloch outlined the ranges of hourly rates for attorneys and paralegals of varying experience considered to be "in forum." McCulloch, at *21. As of October 24, 2016, all sitting special masters adopted the ranges set forth in McCulloch, subsequently posting, on the Court's website, fee schedules setting the Office of Special Masters' "Attorneys' Forum Hourly Rate Fee Schedule" for the year 2015-2016. See generally OSM Attorneys' Forum Hourly Rate Fee Schedules, United States Court of Federal Claims Website, http://www.uscfc.uscourts.gov/node/2914 (last visited Nov. 21, 2017.)

[9] The 2017 Fee Schedule can be accessed at: http://www.uscfc.uscourts.gov/sites/default/files/Attorneys-Forum-Rate-Fee-Schedule-2017.pdf.

Firm's requested hourly rates for 2017. See generally Patton, supra.[10] The undersigned adopts the reasoning in Patton for the instant analysis. As Mr. Shoemaker's requested hourly rate for 2017 is in accordance with the hourly rate established in Patton, the undersigned awards his hourly rate in full.

### ii. Ms. Gentry

Ms. Gentry's requested hourly rates for work performed in the years 2004, 2006, and 2007 were found to be reasonable in Hooker and were awarded. Hooker, supra at *26. Ms. Gentry's requested rates will also be awarded in full in this instant application. The undersigned acknowledges that Hooker did not set Ms. Gentry's hourly rates for 2005, 2008, and 2009. See generally Id. However, in this instant application, the undersigned finds Ms. Gentry's requested hourly rates for those years to be reasonable as it reflects a slight progressive yearly rate increase from prior years, and is in line with the remainder of the hourly rate ranges awarded in Hooker. See Pet'rs' App. at 77-78. The undersigned thus awards Ms. Gentry's requested hourly rates for 2005, 2008, and 2009 in full.

Ms. Gentry requests a rate of $348.00 per hour for work performed in 2012. Pet'rs' App. at 78. The undersigned finds this rate to be reasonable based on Ms. Gentry's experience and skill in Vaccine Program cases, and awards that rate in full. Furthermore, Ms. Gentry's requested hourly rate for 2015 in this instant application is in accordance with the hourly rate established in Miller. Miller, supra at *8. The undersigned thus awards Ms. Gentry's 2015 requested hourly rate in full.

### iii. Ms. Knickelbein

In Hooker, Ms. Knickelbein was awarded a rate of $225.00 per hour for work performed in 2005, $261.00 per hour for work performed in 2007, and $300.00 per hour for work performed in 2011. Hooker, supra, 2017 WL 3033940, at *26. The undersigned adopts those rates for 2005, 2007, and 2011 in this instant application, and thus awards Ms. Knickelbein's rates in accordance with those rates.[11]

---

[10] The undersigned awarded the following 2017 hourly rates in Patton for attorneys of the Shoemaker Firm:

|  | 2017 |
|---|---|
| **Mr. Shoemaker** | $440.00 |
| **Ms. Gentry** | $424.00 |
| **Ms. Knickelbein** | $378.00 |

Patton v. Sec'y of Health & Human Servs., No. 16-461V, 2017 WL ---, slip op. at 3 (Fed. Cl. Spec. Mstr. Aug. 24, 2017).

[11] Ms. Knickelbein's requested hourly rates for the year 2005 and 2007 are in accordance with the rates established in Hooker, and thus will be awarded in full. However, Ms. Knickelbein's requested rate of $302.00 per hour for 2011 will be reduced by $2.00 to be in accordance with the 2011 rates awarded in Hooker. See 2017 WL 3033940, at *26.

Ms. Knickelbein requests a rate of $271.00 for 2008, $281.00 for 2009, and $291.00 for 2010. Pet'rs' App. at 78-79, 83. The undersigned finds those rates to be reasonable based on Ms. Knickelbein's experience in Vaccine Program cases and awards those rates in full.

In L.A., Ms. Knickelbein requested, and was awarded, an hourly rate of $300.00 per hour for the year 2012, and $325.00 per hour for the years 2013 and 2014. L.A., supra, 2016 WL 1104860, at *5 (Fed. Cl. Feb. 29, 2016). The undersigned adopts those rates in this instant application and thus awards Ms. Knickelbein's rates in accordance with those rates.[12]

In Patton, supra, the undersigned awarded Ms. Knickelbein hourly rates for the years 2015 through 2017. Patton v. Sec'y of Health & Human Servs., No. 16-461V, 2017 WL ---, slip op. at 2-3 (Fed. Cl. Spec. Mstr. Aug. 24, 2017). The undersigned adopts those rates for the instant decision. As Ms. Knickelbein's requested hourly rates for 2015 through 2017 in this instant application are in accordance with the hourly rate established in Patton, the undersigned awards those hourly rates in full.[13] Id.

---

[12] Ms. Knickelbein's requested hourly rate for the year 2013 is in accordance with the rate awarded in L.A., and thus will be awarded in full. However, Ms. Knickelbein's requested rates for the years 2012 and 2014 will be reduced to be in accordance with the appropriate rates awarded in L.A. See 2016 WL 1104860, at *5.

[13] In Patton, Ms. Knickelbein requested an hourly rate of $365 for the majority of 2016. Patton v. Sec'y of Health & Human Servs., No. 16-461V, 2017 WL ---, slip op. at 2, n. 3 (Fed. Cl. Spec. Mstr. Aug. 24, 2017). However, Ms. Knickelbein's billing entries in Patton also reflected a slightly lower hourly rate of $363.00 for billing entries starting in late 2016. Id. The undersigned in this instant decision awards Ms. Knickelbein a rate of $365.00 per hour for the *entirety* of 2016.

8

### iv. Summary of Hourly Rates Awarded

In light of the above, the hourly rates to be awarded in this instant application are as follows:

|      | Mr. Shoemaker | Ms. Gentry | Ms. Knickelbein |
|------|---------------|------------|-----------------|
| 2004 | $278.00       | $260.00    | ---             |
| 2005 | $288.00       | $270.00    | $225.00         |
| 2006 | $299.00       | $280.00    | ---             |
| 2007 | ---           | $290.00    | $261.00         |
| 2008 | $324.26       | $301.00    | $271.00         |
| 2009 | $336.58       | $312.00    | $281.00         |
| 2010 | ---           | ---        | $291.00         |
| 2011 | $336.58       | ---        | $300.00         |
| 2012 | $372.00       | $348.00    | $300.00         |
| 2013 | $385.00       | ---        | $325.00         |
| 2014 | $400.00       | ---        | $325.00         |
| 2015 | $415.00       | $400.00    | $350.00         |
| 2016 | $430.00       | ---        | $365.00         |
| 2017 | $440.00       | ---        | $378.00         |

### c. Reduction of Billable Hours

The undersigned has reviewed the billing records submitted with petitioners' request and finds a reduction in the number of hours billed by the Shoemaker Firm is appropriate for three reasons. First, the Shoemaker Firm requests compensation for administrative work, including for performing internal accounting tasks of the firm, prepping and filing documents on CM/ECF, and sending intraoffice emails between attorneys to inform each other of upcoming deadlines. Second, petitioners request compensation at an attorney's hourly rate for paralegal work. Third, many of counsel's billing entries are vague, making it difficult for the undersigned to determine whether the task billed is reasonable.[14]

### i. Administrative Time

It is well established that billing for clerical and other secretarial work is not permitted in the Vaccine Program. Rochester v. United States, 18 Cl. Ct. 379, 387 (1989) (denying an award of fees for time billed by a secretary and finding that "[these] services … should be considered as normal overhead office costs included within the attorneys' fees rates"); Mostovoy v. Sec'y of Health & Human Servs., No. 2016 WL 720969, *5 (Fed. Cl. Spec. Mstr. Feb. 4, 2016).

---

[14] The undersigned also notes that several of the entries constitutes block billing, wherein counsel billed for multiple tasks in a single entry. Some of the blocks contain time that is not compensable, for one of above-listed reasons, along with time that is compensable. For such entries, it is impossible to determine the precise portion of the time billed that should be compensated.

The Shoemaker Firm's time sheets contain numerous entries that are best characterized as administrative work. For example, Mr. Shoemaker billed time for reviewing bills from the court reporter, conducting internal audits of expense reports of the Shoemaker Firm,[15] and even billing time for his "[a]ttempts to call [Mrs.] Ellena [Prokopeas]."[16] Ms. Knickelbein also billed time for a plethora of administrative tasks such as filing documents on CM/ECF[17] and for sending numerous intraoffice emails to remind Mr. Shoemaker of upcoming deadlines.[18] These types of entries highlighted above do not constitute billable time, and the undersigned thus reduces petitioners' fee award for them.[19]

### ii. Paralegal Time

It is well established that attorneys who bill for performing non-attorney-level work must appropriately reduce their hourly rate to reflect that of a legal secretary or paralegal. Mostovoy, 2016 WL 720969, at *5.

After carefully reviewing petitioners' application for fees and costs, the undersigned finds that several of the hours billed by attorneys at their regular hourly rates are more appropriately classified as paralegal time. For example, Mr. Shoemaker block-billed several hours for, among other things, assisting support staff organize medical records to be subsequently scanned and filed as exhibits,[20] and for "put[ting] together trial notebooks."[21] Moreover, Ms. Knickelbein's billing records contain numerous entries for work that is paralegal in nature, including reviewing and revising medical provider sheets,[22] emailing petitioners to compile a list of medical providers,[23] and calling medical providers to procure medical records.[24] Ms. Knickelbein also billed for numerous

---

[15] See e.g., Pet'rs' App. at 75-76.

[16] Pet'rs' App. at 68.

[17] See e.g., Id. at 79-80, 82-85.

[18] See e.g., Id. at 92-93, 95-98.

[19] The entries listed above do not constitute an exhaustive list of administrative entries in petitioners' attorneys' billing records but rather are intended to serve as an example of those types of entries.

[20] Pet'rs' App. at 61.

[21] Id. at 73.

[22] Id. at 79.

[23] Id.

[24] Id. at 81.

10

ancillary tasks related to filing documents on CM/ECF, such as revising the table of contents in a filing and drafting a "Notice of Filing Documents" — documents that are routinely included with filed exhibits in Vaccine Program cases.[25] In total, the Shoemaker Firm attorneys billed over twenty hours of what is most appropriately classified as paralegal time.[26] The undersigned thus reduces petitioners' fee award for this incorrectly billed paralegal time.

### iii. Vague Entries

The undersigned has previously found it reasonable to decrease an award of attorneys' fees for vagueness. Mostovoy v. Sec'y of Health and Human Servs, No. 02-10V, 2016 WL 720969 (Fed. Cl. Feb. 4, 2016); Barry v. Sec'y of Health and Human Servs., No. 12-39V, 2016 WL 6835542 (Fed. Cl. Spec. Mstr. Oct. 25, 2016) (reducing a fee award by ten percent due to vague billing entries); Davis v. Sec'y of Health and Human Servs., No. 15-159V, 2017 WL 877277, at *4 (Fed. Cl. Feb. 7, 2017) (reducing a fee award for vague entries). It is well established that an application for fees and costs must sufficiently detail and explain the time billed so that a special master may determine, from the application and the case file, whether the amount requested is reasonable. Bell v. Sec'y of Health & Human Servs., 18 Cl. Ct. 751, 760 (1989); Rodriguez v. Sec'y of Health & Human Servs., 2009 WL 2568468 (Fed. Cl. Spec. Mast. June 27, 2009). Petitioners bear the burden of documenting the fees and costs claimed. Id. at *8.

The undersigned finds the number of vague billing entries in this case particularly troubling. Mr. Shoemaker billed 1.7 hours over 17 separate billing entries to "[r]eview [a] pleading." See Pet'rs' App. at 61-66, 69, 71-74. Without additional information about what Mr. Shoemaker was reviewing or why, these hours are not compensable.[27] Moreover, Mr. Shoemaker's records billed more than 6.5 hours over approximately 58 separate entries for "[e]mail from Sabrina," or "[e]mail to Sabrina," or "[e]mail from and to Sabrina." See Pet'rs' App. at 60-69, 71-77.

Time records should be sufficiently detailed so that the undersigned may understand the amount of time being spent and the work being performed. These types of entries highlighted above do not include sufficient detail about what tasks were being performed and/or why. The

---

[25] Pet'rs' App. at 78-80, 82-85, 87-95, 97.

[26] The entries listed above do not constitute an exhaustive list of entries reflecting paralegal tasks billed at an attorney's rate in petitioners' attorneys' billing records but rather are intended to serve as an example of those types of entries.

[27] Assuming, *arguendo*, that Mr. Shoemaker was reviewing pleadings that were relevant to the case and that this time was otherwise billable, the undersigned notes that this time would likely not be billable in this case, as the majority of Ms. Knickelbein's billable time was spent reviewing the filings in this case, suggesting that this work is duplicative. See generally Pet'rs' App. at 78-98.

11

undersigned thus reduces petitioners' fee award for such vague entries.[28]

### iv. Reduction of Billable Hours Summary[29]

For these reasons, and after carefully reviewing petitioners' application, the undersigned reduces petitioners' attorneys' fees award. In making reductions, a line-by-line evaluation of the fee application is not required. Wasson v. Sec'y of Health & Human Servs., 24 Cl. Ct. 482, 484 (1991), rev'd on other grounds and aff'd in relevant part, 988 F.2d 131 (Fed. Cir. 1993). Special masters may rely on their experience with the Vaccine Act and its attorneys to determine the reasonable number of hours expended. Id. Just as "[t]rial courts routinely use their prior experience to reduce hourly rates and the number of hours claimed in attorney fee requests . . . [v]accine program special masters are also entitled to use their prior experience in reviewing fee applications." Saxton v. Sec'y of Health & Human Servs., 3 F.3d 1517, 1521 (Fed. Cir. 1993).

Therefore, the undersigned further reduces petitioners' fee request by 25 percent. This 25 percent reduction is in addition to the appropriate hourly rate adjustments for Ms. Knickelbein's hourly rates for 2011, 2012, and 2014 outlined above.

---

[28] The entries listed above do not constitute an exhaustive list of vague entries in the Shoemaker Firm's billing records but rather are intended to serve as an example of those types of entries.

[29] The undersigned notes that the attorneys of the Shoemaker Firm have shown a repeated pattern of impermissible billing practices in several Vaccine Program cases decided by her, similar to the impermissible billing practices found to be unreasonable in this instant decision. See, e.g., Bondi v. Sec'y of Health & Human Servs., No. 15-749V, 2016 WL 1212890 (Fed. Cl. Spec. Mstr. Mar. 4, 2016); Patton v. Sec'y of Health & Human Servs., No. 16-461V, 2017 WL --- (Fed. Cl. Spec. Mstr. Aug. 24, 2017); R.P. v. Sec'y of Health & Human Servs., No. 16-753V, 2017 WL --- (Fed. Cl. Spec. Mstr. Oct. 2, 2017). The undersigned thus advises the Shoemaker Firm attorneys to carefully scrutinize their billing practices prior to filing future attorneys' fees and costs motions before the undersigned.

### d. Total Reduction of Requested Fees

Reducing for Ms. Knickelbein's hourly rates for the years 2011, 2012, and 2014 outlined above, results in the following adjustments:

| Year | Person | Billed Time | Requested Hourly Rate | Adjusted Rate | Billed Amount | Adjusted Amount |
|---|---|---|---|---|---|---|
| **2011** | Knickelbein | 3.40[30] | $302.00 | $300.00 | $1,026.80 | $1,020.00 |
| **2012** | Knickelbein | 11.00[31] | $313.00 | $300.00 | $3,443.00 | $3,300.00 |
| **2014** | Knickelbein | 7.40[32] | $337.00 | $325.00 | $2,493.80 | $2,405.00 |
| | | | | Billed Amount: | $6,963.60 | |
| | | | | **Adjusted Amount**: | | **$6,725.00** |

The rate adjustments shown above reduce the billed amount to $6,725.00, a reduction of $238.60. Thus, the petitioners' attorneys' fees total amounts to $**98,798.75**.

As also discussed, the undersigned makes a further reduction of 25 percent ($24,699.69[33]) to address the deficient billing practices mentioned above. Thus, petitioners are awarded a total of **$74,099.06** in attorneys' fees.

## IV. Reasonable Attorneys' Costs

Like attorneys' fees, a request for reimbursement of costs must be reasonable. Perreira v. Sec'y of Health & Human Servs., 27 Fed. Cl. 29, 34 (Fed. Cl. 1992). Petitioners request $9,795.70 in attorneys' costs. Pet'rs' App. at 1. For the reasons set forth below, the undersigned awards petitioners $6,745.70 in attorneys' costs.

### a. Expert costs – Dr. Joseph A. Bellanti

Petitioners request $8,200.00 in expert fees for Dr. Bellanti. Pet'rs' App. at 100-101. The request is supported by an invoice from Dr. Bellanti detailing the hours expended, hourly rate charged, and providing information about the services performed. See Pet'rs' App. at 100, 122. Dr. Bellanti prepared expert reports in this case and performed work on the case from 2013 through 2014. Dr. Bellanti billed his time at a rate of $400.00 per hour. Pet'rs' App. at 122.

As an initial matter, the undersigned notes that Vaccine Program experts have previously

---

[30] Pet'rs' App. at 86.

[31] Pet'rs' App. at 86-89.

[32] Pet'rs' App. at 91-93.

[33] $98,798.75 x 0.25 = $24,699.69 (as rounded)

been awarded a rate of $400.00 per hour in prior decisions. See, e.g., Barry v. Sec'y of Health & Human Servs., No. 12-039V, 2016 WL 6835542, at *9 (Fed. Cl. Spec. Mstr. Oct. 25, 2016), amended on other grounds, No. 12-039V, 2017 WL 877273 (Fed. Cl. Feb. 9, 2017) (the undersigned compensating petitioner's expert, Dr. Blitshteyn, at a rate of $400.00 per hour.). However, the undersigned typically reserves that rate for highly-credentialed, experienced, and competent Vaccine Act expert witnesses. In this case, the record clearly goes against such a rate for Dr. Bellanti. In his Ruling on Factual Issues, then-Special Master Hastings discussed reasons[34] that he found Dr. Bellanti to be a highly questionable expert witness in this instant case, and in prior cases before him, [35] due to Dr. Bellanti's propensity to base his expert opinion on "clearly erroneous" factual assumptions that were "strongly contradicted" by the medical records. Prokopeas v. Sec'y of Health & Human Servs., No. 04-1717V, 2017 WL 3033775, at *34 (Fed. Cl. Spec. Mstr. June 14, 2017). Specifically, then-Special Master Hastings concluded his assessment of both of petitioners' expert opinions in the case as follows:

> For the reasons described in detail above, I find that the expert opinions of Drs. Bellanti and Corbier [petitioners' other expert] in this case are based upon numerous flawed assumptions, with those erroneous assumptions being *strongly contradicted* by C.A.P.'s medical records. Hence, I find that the expert opinions of both Drs. Bellanti and Corbier are *fatally flawed*, and thus, *wholly unreliable*.

Prokopeas v. Sec'y of Health & Human Servs., No. 04-1717V, 2017 WL 3033775, at *34 (Fed. Cl. June 14, 2017). In light of the above, the undersigned reduces Dr. Bellanti's hourly rate in this case by 25% and awards an adjusted rate of $300.00 per hour.

Accordingly, the undersigned will award a total of $6,150 in expert fees for Dr. Bellanti. This amount represents 20.50 hours compensated at $300 per hour. This results in a reduction of $2,050.00 for expert fees.

---

[34] See, e.g., Prokopeas v. Sec'y of Health & Human Servs., No. 04-1717V, 2017 WL 3033775, at *34 (Fed. Cl. Spec. Mstr. June 14, 2017) ("I emphasize that the majority of the factual assumptions reflected in both of the expert reports of Dr. Bellanti submitted in this case (Exs. 87 and 89) are *clearly erroneous*.").

[35] See, e.g., Prokopeas v. Sec'y of Health & Human Servs., No. 04-1717V, 2017 WL 3033775, at *34, n. 39 (Fed. Cl. Spec. Mstr. June 14, 2017) ("I note that, in serving as an expert witness for petitioners in prior Vaccine Act cases, Dr. Bellanti has a history of basing his causation opinion on *clearly faulty* factual assumptions. In a prior case before me in which Dr. Bellanti served as Petitioners' expert witness, *Brook v. HHS*, No. 04-405V, 2015 WL 3799646 (Fed. Cl. Spec. Mstr. May 14, 2015), I found that Dr. Bellanti's causation opinion in that case was "premised on assumptions that run *contrary* to the clinical history presented by the medical records" (citations omitted).").

### b. Retainer fees – Dr. Yuval Shafrir

Petitioners request $1,000.00 for a retainer fee paid to Dr. Shafrir by their counsel. Pet'rs' App. at 100-102. The request is not supported by an invoice from Dr. Shafrir detailing the hours expended, or hourly rate charged. Apart from an indication that Dr. Shafrir was paid a retainer fee of $1,000 by the Shoemaker Firm in July 2012, petitioners' request is not supplemented by any information about the type of services performed by Dr. Shafrir, especially in light of the fact that he did not submit an expert report in the case. Because it is counsel's burden to properly document the attorneys' costs claimed, the undersigned rejects this entire expense amount. Indeed, the Vaccine Program's Guidelines for Practice state, "A list of costs incurred by counsel and/or advanced under the petition…along with supporting documentation, should accompany the application. Such expenses, if not self-explanatory, should be explained sufficiently to demonstrate their relation to the prosecution of the petition."[36] This results in an additional reduction of $1,000.00 for expert costs claimed by petitioners' counsel.

### c. Other Expenses

The undersigned has reviewed all other expenses incurred by the Shoemaker Firm in the case, including expenses for obtaining medical records and ordering a hearing transcript in the case. The undersigned finds those expenses to be reasonable and awards them in full.

### d. Reduction of Attorneys' Costs Summary

Based upon the above analysis, calculating the reductions for attorneys' costs results in the following adjustments:

| | |
|---|---|
| **Attorneys' costs requested**: | $9,795.70 |
| Reductions for Dr. Bellanti's expert costs: | ($2,050.00) |
| Reductions for Dr. Shafrir's retainer fees: | ($1,000.00) |
| Reductions for other costs: | ($0.00) |
| **Total Attorneys' costs awarded**: | **$6,745.70** |

These adjustments results in a total reduction of $3,050.00.

### V. Reasonable Petitioners' Costs

Petitioners request a total of $7,723.57 in out-of-pocket costs. Pet'rs' App. at 1, 3-5. For the reasons set forth below, the undersigned awards petitioners $7,573.57 in costs.

---

[36] Guidelines for Practice Under the National Vaccine Injury Compensation Program ("Guidelines for Practice") at 69 (revised April 21, 2016) found at http://www.uscfc.uscourts.gov/sites/default/files/GUIDELINES-FOR-PRACTICE-4212016.pdf (last visited on Nov. 21, 2017) (Section X, Chapter 3, Part B(2)).

### a. Bridge Builder Academy Expense

Petitioners request to be reimbursed $150.00 for an "academic consultation" of C.A.P. by an educational specialist from September 2011. Pet'rs' App. at 3, 33. The invoice for this expense clearly reflects that this consultation was for continuing education and care of C.A.P., and not related to factual or causation issues, nor reasonable or necessary to the litigation, and thus will not be reimbursed. Id. This results in a reduction of $150.00.

### b. Travel Expenses Related To Treatment By Dr. Rajadhyaksha

Petitioners also request to be reimbursed for travel expenses related to medical treatment sought by C.A.P. from his treating geneticist, Dr. Aparna Rajadhyaksha, in Miami, Florida. Pet'rs' App. at 4, 36-41.

The expense report submitted by petitioners for expenses related to their visit with Dr. Rajadhyaksha states that the treatment provided by Dr. Rajadhyaksha was "paid by insurance." Pet'rs' App. at 4. Petitioners submitted medical records from Dr. Rajadhyakasha reflecting that C.A.P. underwent genetic testing during his medical examination by Dr. Rajadhyakasha. Ex. 94 at 4. Genetic testing is often important to the determination of causation issues in Vaccine Program cases. Petitioners initially submitted an expert report from Dr. Bellanti that referenced the possibility of genetic factors explaining C.A.P.'s neurodevelopmental condition in the case. See Ex. 87 at 3. The undersigned will thus award the entire amount requested by petitioners for travel expenses related to C.A.P.'s consultation with Dr. Rajadhyakasha as she characterizes such expenses as being incurred for the purposes of resolving the causation issues in the case.

### c. Expenses Related To Treatment By Dr. Corbier

Petitioners additionally request to be reimbursed for medical consultation charges and travel expenses related to medical treatment sought by C.A.P. from Dr. Jean-Ronel Corbier located in Charlotte, NC. Pet'rs' App. at 4-5, 42-58. Petitioners seek reimbursement for costs related to two consultation visits with Dr. Corbier in October 2015 and August 2017. Id. Petitioners filed expert reports from Dr. Corbier in December 2015 and November 2017 in which Dr. Corbier provided medical causation opinions in the case. See generally Ex. 98, 105. The undersigned thus awards the entirety of the amount related to C.A.P.'s consultation visits with Dr. Corbier as she characterizes such expenses as being reasonably incurred for the purposes of resolving the causation issues in the case.

### d. Expert Consultant Expenses

Petitioners request reimbursement of $1,000.00 for the expert consultant services of Brett Abrahams, Ph.D. Pet'rs' App. at 4, 34-35. The request is supported by an invoice from Dr. Abrahams detailing the hours expended, hourly rate charged, and providing some information about the services performed. See Pet'rs' App. at 35. Dr. Abrahams prepared an expert report in 2015 on a limited issue in the case. Dr. Abrahams billed his time at a rate of $200.00 per hour. Id. The undersigned finds this cost to be reasonable and awards the amount in full.

### e. Fact Hearing Travel Expenses

Petitioners also seek travel expenses incurred while testifying at the fact hearing held in the case. The undersigned finds these costs to be reasonable and awards the amount in full.

### f. Other costs

Petitioners additionally request reimbursement of costs related to filing fees and obtaining medical records. The undersigned finds those expenses to be reasonable and awards them in full.

### g. Reductions in Petitioners' Costs Summary[37]

Based upon the above analysis, calculating the reductions for petitioners' out-of-pocket costs results in the following adjustments:

| | |
|---|---|
| **Petitioners' out-of-pocket costs requested**: | $7,723.57 |
| Reductions for academic consultation services: | ($150.00) |
| **Total Petitioners' out-of-pocket costs awarded**: | **$7,573.57** |

This adjustments results in a total reduction of $150.00.

## VI. Conclusion

The undersigned awards petitioners the following for attorneys' fees and costs:

**Attorneys' Fees**

| | |
|---|---|
| Requested attorneys' fees: | $99,037.35 |
| Reductions (Ms. Knickelbein rates): | ($238.60) |
| Reductions (25% for billing issues): | ($24,699.69) |
| Adjusted Total Fees Awarded: | **$74,099.06** |

**Attorneys' Costs**

| | |
|---|---|
| Requested attorneys' costs: | $9,795.70 |
| Total Reductions: | ($3,050.00) |
| Adjusted Total Costs Awarded: | **$6,745.70** |

| | |
|---|---|
| **Total Attorneys' Fees and Costs Awarded:** | **$80,844.76** |

---

[37] The undersigned notes that although she awards the substantial majority of petitioners' incurred expenses up to this point in the case, she requests that petitioners seek pre-approval of any future out-of-pocket litigation expenses.

17

The undersigned awards petitioners the following for their out-of-pocket costs:

**Petitioners' Costs**
Requested petitioners' costs:                $7,723.57
Reductions:                                  ($150.00)

**Total Petitioners' Costs Awarded:**        **$7,573.57**

Accordingly, the undersigned awards:

**(1) A lump sum in the amount of $7,573.57, representing reimbursement for petitioners' costs, in the form of a check payable to petitioners, Mr. Chris Prokopeas and Mrs. Ellena Prokopeas; and**

**(2) A lump sum in the amount of $80,844.76, representing reimbursement for attorneys' fees and costs, in the form of a check payable jointly to petitioners, Mr. Chris Prokopeas and Mrs. Ellena Prokopeas, and their counsel, Clifford J. Shoemaker.**

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of Court **SHALL ENTER JUDGMENT** in accordance with this decision.[38]

**IT IS SO ORDERED.**

s/Nora Beth Dorsey
Nora Beth Dorsey
Chief Special Master

---

[38] Pursuant to Vaccine Rule 11(a), entry of judgment is expedited by the parties' joint filing of notice renouncing the right to seek review.